## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMEL BILLUPS, and | : | |
| JACQUELINE ROSARIO, | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:15-cv-1006** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| | : | |
| CATHY UTZ, <u>et al.,</u> | : | |
| **Defendants** | : | |

### MEMORANDUM

Before the Court are two motions to dismiss, one filed by Defendant Franklin County and its individual employees (Doc. No. 11), and another filed by Defendant Pennsylvania Department of Human Services Secretary Ted Dallas and affiliates of the state government (Doc. No. 21).  The motions have been fully briefed and are ripe for disposition.  For the reasons that follow, the Court will grant the motions in part and dismiss Plaintiffs' amended complaint without prejudice.

### I.      BACKGROUND

This action is one of part of a broader controversy stemming from a 2009 child abuse investigation into Plaintiffs Jamel Billups and Jacqueline Rosario.[1]  The present case is ancillary to the principal dispute concerning the abuse investigation itself, and is narrowly focused on whether state officials had the authority to summarily reinstate Plaintiffs' listing on ChildLine, the state's child abuse database, months after expunging the original listing.  (<u>See</u> Doc. No. 10.)

---

[1] A federal civil rights lawsuit Plaintiffs filed against medical practitioners and Franklin County affiliates regarding the initial child abuse investigation remains pending.  <u>Billups, et al., v. Penn State Hershey Med. Ctr., et al.,</u> No. 11-cv-01784 (M.D. Pa.).

On October 19, 2009, Defendant Franklin County's child protection agency received a report that Plaintiffs had abused their minor child, L.B..[2]  (Doc. No. 10 ¶ 14.)  Whether the report of abuse was justified is a question that remains controverted in related litigation in both the federal and Pennsylvania courts.  See Billups, et al., v. Penn State Hershey Med. Ctr., et al., No. 11-cv-01784 (M.D. Pa.).

On the same day, October 19, 2009, ChildLine was notified of the abuse allegation. (Doc. No. 10 ¶ 23.)  On December 18, 2009, the Franklin County Court of Common Pleas conducted a dependency hearing as a result of the abuse investigation, ultimately making a factual finding that Plaintiffs had abused their child.  (Id. ¶ 27.)  As a result of this factual finding, on February 22, 2010, state authorities updated ChildLine to reflect a "founded" report of child abuse stemming from the October 19, 2009 report.  (Id. ¶ 28.)  Plaintiff Billups was also criminally charged relating to the child abuse allegation.  (See id. ¶ 56.)

In December 2010, Plaintiff Billups was acquitted by a jury of all criminal charges, and on September 21, 2011, Plaintiffs received additional exculpatory evidence, Plaintiffs appealed the ChildLine report to the Pennsylvania Department of Public Welfare, an agency since renamed the Department of Human Services.  (See id. ¶ 33.)  The agency rejected Plaintiffs' appeal as untimely, because Plaintiffs lodged their appeal well outside the state regulations' 45-day period for appealing "founded" ChildLine listings.  (See id. ¶ 34; Doc. No. 10-6.)  The state agency's Bureau of Hearings and Appeals (BHA) also rejected Plaintiffs' subsequent appeal on timeliness grounds (id. ¶ 37), leading Plaintiffs to appeal the BHA disposition to the Commonwealth Court of Pennsylvania on May 15, 2012 (id. ¶¶ 37-38).

---

[2] The factual background is drawn from Plaintiffs' amended complaint and accepted as true for the purpose of these motions only.

During litigation in the Commonwealth Court, Plaintiffs and the state agency agreed to enter mediation and to stay the litigation in the Commonwealth Court.  (Id. ¶¶ 39-41.)  As part of this process, Plaintiffs and the state agency agreed that the Commonwealth Court action would be stayed while Plaintiffs sought an agency review by the Department of Human Services Secretary or designee pursuant to 23 Pa. Stat. 6341(a).  (Id. ¶¶ 40-41.)  That statute provides that the state agency may expunge founded ChildLine reports "upon good cause shown."  23 Pa. Stat. § 6341(a) (since amended).

Defendant Cathy Utz, acting as the designee of the agency secretary, reviewed Plaintiffs' case.  (Id. ¶ 42.)  On June 7, 2013, Defendant Utz sent a letter to Plaintiffs informing them that, upon review, the secretary had decided to expunge the ChildLine report in accordance with the state statute.  (Id.; see also Doc. No. 10-1.)  According to the letter, Plaintiffs' "report of child abuse ha[d] been expunged from the Statewide central registry of child abuse."  (Doc. No. 10-1.) At the time of the expungement, the state statute did not provide for notice to the county agency that had originated the child abuse report or for any review of the decision to expunge the ChildLine record.[3]  See 23 Pa. Stat. § 6341(a) (effective to December 30, 2014).

Upon learning of the Secretary's decision to expunge, officials from Franklin County wrote to Defendant Utz.  (Doc. No. 10-3.)  In their June 28, 2013 letter, signed by Defendant Franklin County child services director Douglas Amsley and Defendant Franklin County child services solicitor Brian Bornman, the county officials requested that Defendant Utz reconsider her decision to expunge the ChildLine reports based on "substantial misinformation" provided by Plaintiffs to the state agency.  (Doc. No. 10-3 at 2.)  According to the letter, Plaintiffs did not fully apprise the state agency of the exhaustive judicial proceedings that occurred in the wake of

---

[3] The statute has since been amended to provide both notice to the originating local agency and for a ninety-day period during which the local agency may appeal the expunction decision.  23 Pa. Stat. § 6341(b) (effective December 31, 2014).

the dependency hearing – procedures which, according to the letter, deprived the state agency of jurisdiction over the claim.  (Id.)  Though not apparent from the text of the letter, Plaintiffs allege that the county officials sought reconsideration of the expunction because the county was defending Plaintiffs' civil rights lawsuit, and they "desire[d] to continue to have founded reports to use in their defense[.]"  (Doc. No. 10 ¶ 61.)

On August 8, 2013, Defendant Utz sent Plaintiffs another letter informing them that the agency was reconsidering her expunction decision based on "the existence of additional medical reports and opinions relating to" the child abuse report "that were not previously provided" to the state agency in the initial expunction request.[4]  (Doc. No. 11-3.)  The letter contained no information about avenues to challenge the reconsideration, nor does it contain any indication of the statute or regulation that authorized reconsideration of the expunction order.  (See id.)  As it existed at the time, Section 6341 did not provide for any review of expunction decisions by the agency.  See 23 Pa. Stat. § 6341(a) (effective to December 30, 2014).

On December 19, 2013, Defendant Utz sent Plaintiffs another letter.  (Doc. No. 10-2.) According to the letter, the agency completed its review of Plaintiffs' file after receiving "additional medical information."  (See id.)  Defendant Utz informed Plaintiffs that their request for expungement – that had already been granted on June 7, 2013 – was denied, and that, Plaintiffs would accordingly "remain listed as perpetrators of child abuse" on the agency's database.  (Id.)

---

[4] Plaintiffs did not attach this letter to their complaint or other filings.  Instead, it accompanied one of the motions to dismiss.  (Doc. No. 11.)  Typically, a court reviewing a Rule 12(b)(6) motion looks only to the allegations of the complaint, but the Court will consider this letter, especially because Plaintiffs' claims are founded in part on the absence of notice of the new review, its authenticity is uncontested, and Defendants attached it to their motion to dismiss.  See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).

Since the reinstatement, proceedings in the state judicial and administrative systems have been ongoing.  (E.g., Doc. No. 27-2.)  After the reinstatement, the proceedings stemming from Plaintiffs' initial appeal of their ChildLine listing in the Commonwealth Court of Pennsylvania resumed.  (See Doc. No. 11-5 ¶ 27.)  "On June 5, 2014, the Commonwealth Court issued an unreported, sealed Opinion in which the case was remanded" to the BHA to consider Plaintiffs' appeal nunc pro tunc.  (Id.)  The Commonwealth Court ordered the and directed that the agency "revisit[] the merits" of the founded report's reinstatement "in the interest of justice, especially considering the severe impact upon Petitioners' fundamental right of reputation by an administrative breakdown."  Id.  To be clear, there is no dispute that the Commonwealth Court has the authority to reverse the reinstatement of the founded report on its merits and cause the founded report to be expunged.  Upon remand, the BHA conducted evidentiary hearings and determined that, while it retained jurisdiction over the ChildLine report itself, the BHA possesses no jurisdiction to determine whether Defendant Utz's reinstatement of the report was lawful.  (Doc. No. 27-2.)  On the request of Plaintiffs, the BHA stayed its determination on the merits of the report until this Court has adjudicated Plaintiffs' present federal complaint.  (Id.)

Plaintiffs initiated the present action on May 23, 2015 (Doc. No. 1), and they filed their amended complaint on July 21, 2015 (Doc. No. 10).  Plaintiffs allege that the re-instatement of their ChildLine report without notice or the opportunity for a hearing, and without any express statutory authorization, violated due process protections from both the Pennsylvania and United States Constitutions, and that Defendants engaged in a conspiracy to commit the violation.  (Doc. No. 11 ¶ 81(a-b).)  Plaintiffs also allege that their re-listing on the database caused compensable injury to their reputations in violation of the Pennsylvania and United States Constitutions, and that Defendants also engaged in a conspiracy to cause injury to their reputation.  (Id. ¶ 81 81(c-

d).)  In addition to damages, Plaintiffs seek declaratory and injunctive relief requiring Defendants to de-list them from the ChildLine database.  (Id. ¶ 80.)

Defendants Amsley, Bronman, and Franklin County (together, the County Defendants) filed a motion to dismiss the amended complaint on August 4, 2015.  (Doc. No. 11.)  In addition to challenging the sufficiency of Plaintiffs' allegations, the County Defendants also urge the Court to abstain from adjudicating Plaintiffs' claims under the Younger abstention doctrine. (Doc. No. 11.)  Defendants Dallas, Horshaw,[5] and Utz (together, the Commonwealth Defendants) filed their own motion to dismiss on August 21, 2015, raising many of the same defenses.  (Doc. No. 21.)

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.   Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under

---

[5] Defendant Cindi Horshaw is the state official with the responsibility of maintaining the ChildLine child abuse registry.  (Doc. No. 10 ¶ 9.)

6

Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement for relief." See Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.   DISCUSSION

Plaintiffs' legal theories can be broken down into four broad claims: (1) substantive due process; (2) procedural due process; (3) state constitutional claims; and (4) conspiracy.[6] (See Doc. No. 10.) The Court addresses Defendants' challenges to each of Plaintiffs' claims in turn. The Court then addresses the Younger abstention doctrine.

### A.    Substantive due process claim

Plaintiffs' complaint alleges a violation of "substantive due process," but provides no detail of that claim. (See Doc. No. 10.) The County Defendants have sought dismissal of any such claim that could be found in Plaintiffs' complaint because they argue that Plaintiffs do not allege the type of egregious, conscience-shocking action that is necessary to plead a substantive due process violation. (Doc. No. 16 at 12-13.) Plaintiffs argue in opposition that the complaint

---

[6] The two sets of defendants – the Commonwealth Defendants and the County Defendants – have filed separate motions and briefs. Because the motions raise substantially similar arguments, the Court addresses the motions together.

alleges state action motivated by an "improper motive," and that alone is sufficient to invoke substantive due process.

The Court does not reach the parties' arguments, because to the extent Plaintiffs raise a substantive due process claim, it fails for another reason.  To state a claim under the substantive due process clause for non-legislative acts, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies."  Nicholas v. Pa. State Univ., 227 F.3d 133, 139-140 (3d Cir. 2000).  Unlike procedural due process, where a property interest is properly defined by reference to state law, the property interest necessary to trigger the substantive component of due process must be "fundamental under the United States Constitution."  Hill v. Borough of Kutztown, 455 F.3d 225, 234 n.12 (3d Cir. 2006).  An injury to an individual's right to a reputation, while perhaps protectable pursuant to the Pennsylvania Constitution as discussed below, is legally insufficient to state a substantive due process violation.  Id. ("To the extent Hill's substantive due process claim was based not only on loss of his job, but also on reputational injury that decreased his 'ability to earn a living,' it also fails.") (citing Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399–404 (3d Cir. 2000)).  Plaintiffs have not identified another interest that they claim is worthy of due process protection.  Accordingly, to the extent Plaintiffs have raised a claim for substantive due process, they have failed to enunciate a fundamental property interest Defendants violated, and the claim will be dismissed without prejudice.

> **B.     Procedural due process claim**

Plaintiffs' complaint alleges that Defendant Utz reinstated the ChildLine report after it had been expunged without affording Plaintiffs notice or an opportunity to be heard.  (E.g., Doc. No. 10 ¶¶ 1, 57-58.)  Both the County Defendants and the Commonwealth Defendants seek

dismissal of Plaintiffs' procedural due process claim.  (Doc. Nos. 16 at 9-11; 22 at 6-8.)
Defendants argue that Plaintiffs received ample process throughout the expunction process, so no
additional process was required to reinstate the report.  (Doc. No. 16 at 10-11.)  Defendants also
argue that, even if there was insufficient predeprivation process, there has been more than
adequate postdeprivation opportunities for Plaintiffs to be heard, and Plaintiffs have failed to
utilize all of the state remedies available to them.  (Doc. No. 22 at 6-8.)  In opposition, Plaintiffs
argue that they were afforded no notice and no opportunity to be heard on the reinstatement, and
that the absence of any meaningful process violates the procedural component of the due process
clause.  (See Doc. No. 25 at 13-15.)

   To survive a motion to dismiss a procedural due process claim, a plaintiff is required to
plead facts supporting allegations that "(1) he was deprived of an individual interest that is
encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,'[7] and
(2) the procedures available to him did not provide 'due process of law.'"  Hill, 455 F.3d at 233-
34 (quoting Alvin v. Suzuki, 227 F. 3d 107, 116 (3d Cir. 2000)).  It has long been established
that in the typical case, procedural due process requires "at a minimum," that the deprivation of a
protected interest "be preceded by notice and opportunity for hearing appropriate to the nature of
the case."  Goss v. Lopez, 419 U.S. 565, 579 (1975) (quotations omitted).  However, in some
circumstances, such as when the allegedly unlawful deprivation occurs through unauthorized
action by state officials, a post-deprivation remedy will suffice to satisfy the mandate of

---

[7] As discussed below, Plaintiffs have alleged that the reinstatement of the ChildLine report
impairs a property interest in their reputation as secured by the Pennsylvania Constitution.  To
the extent that a properly pleaded reputation interest would be sufficient under state law, and
because the Court makes a procedural due process determination on another ground, the Court
does not question the sufficiency of Plaintiffs' asserted interest with regard to their procedural
due process claim.  See Hill, 455 F.3d at 234 n.12; see also Nicholas, 227 F.3d at 140 ("While
property interests are protected by procedural due process even though the interest is derived
from state law rather than the Constitution, substantive due process rights are created only by the
Constitution.") (citations omitted).

procedural due process, even in the absence of a predeprivation remedy.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  As the Supreme Court of the United States has held, "predeprivation procedures are simply impracticable" in circumstances where the deprivation was not the result of an official policy, "since the state cannot know when such deprivations will occur."  Id.; see also Parrat v. Taylor, 451 U.S. 527, 543 (1981) ("[T]he deprivation did not occur as a result of some established state procedure.  Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure."), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).  A panel of the Third Circuit has held that a plaintiff may not maintain a federal due process lawsuit when he or she could have taken advantage of an adequate state postdeprivation remedy but did not.  Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 420 (3d Cir. 2008).  However, plaintiffs need not avail themselves of a state remedial procedure when the procedure is "unavailable or patently inadequate."  Alvin, 227 F.3d at 116.

Plaintiffs have clearly alleged that the reinstatement of the ChildLine report was unlawful because it was not authorized by state statute or regulation.  (See e.g., Doc. No. 10 ¶ 52) ("Defendant Utz, without any jurisdiction or other authority, undertook reconsideration of her June 7, 2013 expungement of the founded reports.")  Consequently, the Court is satisfied that this situation warrants application of the rule from Hudson v. Palmer and Parrat v. Taylor.  The question remaining then is whether the postdeprivation remedy available to Plaintiffs satisfies the mandate of procedural due process.

In Parrat, the Supreme Court held that Nebraska's civil tort remedy afforded the inmate-plaintiff sufficient postdeprivation process because through that procedure, "the State hears and pays claims of prisoners housed in its penal institutions."  Parrat, 451 U.S. at 543-44.  The

remedy was deemed sufficient even though it provided less redress than a federal constitutional tort action under 42 U.S.C. § 1983 would have.  Id.  Similarly, the United States Court of Appeals for the Third Circuit has held that an administrative appeal procedure capable of reversing a condemnation order is an adequate postdeprivation remedy when a municipal authority condemns a building pursuant to emergency provisions in its building code.  Elsmere Park, 542 F.3d at 420 (citing Parrat, 451 U.S. at 539).  This is so because the board is authorized to reverse the condemnation order that caused the deprivation order initially, even though the municipal appellate procedure, on its face, could only reverse the order itself and could provide no explicit avenue by which injured property owners could seek compensation.  See id. at 420-24.  In that way, the state postdeprivation procedure does not need to be perfect; it needs only to be "adequate."  Hudson, 468 U.S. at 535.  ("That [the plaintiff] might not be able to recover under these remedies the full amount which he might receive in a § 1983 action is not, as we have said, determinative of the adequacy of the state remedies.")

In the present case, Plaintiffs concede that the Pennsylvania courts are lawfully empowered to provide the precise injunctive relief that they seek here, in that the Pennsylvania Commonwealth Court "does have the jurisdiction to review the Secretary's actions," and it does have the authority to enforce the expungement order.  (Doc. No. 27 at 3-4.)  However, Plaintiffs argue that the state remedy has been effectively eviscerated because the state court has deferred to the BHA, and the BHA has determined that it lacks the jurisdiction to address the lawfulness of Defendant Utz's actions in reinstating the ChildLine report after it had been expunged.  (Doc. No. 25 at 20-24.)  As a result, Plaintiffs themselves requested a stay to pursue this action in federal court.  (Doc. No. 11-5 ¶ 27.)

The critical element of the postdeprivation remedy is the ability of the Commonwealth Court to determine whether or not the <u>merits</u> of the reinstatement are sufficient, not whether the reinstatement procedure provided adequate predeprivation process.  As the Third Circuit has held,

> A due process violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990). If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. <u>See</u> <u>McDaniels v. Flick</u>, 59 F.3d 446, 460 (3d Cir.1995); <u>Dwyer v. Regan</u>, 777 F.2d 825, 834–35 (2d Cir.1985), <u>modified on other grounds</u>, 793 F.2d 457 (2d Cir.1986); <u>Riggins v. Board of Regents</u>, 790 F.2d 707, 711–12 (8th Cir.1986).

<u>Alvin</u>, 227 F.3d at 116.  Based on Plaintiffs' pleadings and exhibits and the uncontroverted documents appended to the motions to dismiss, the Commonwealth Court's review appears facially to have been sufficient to afford Plaintiffs due process under <u>Parrat</u>, even if it became available only after Defendant Utz reinstated the ChildLine report.  As such, on the present record, the Court cannot find that Plaintiffs have sufficiently pleaded a deprivation of procedural due process.  Plaintiffs do not allege in their amended complaint that the Commonwealth Court's merits review was an inadequate or an unavailable remedy, and they concede that the Commonwealth Court action allowed Plaintiffs to seek the principal redress that they seek here. (<u>See</u> Doc. No. 10.)

Further, as Pennsylvania courts have repeatedly held, the state constitution requires no more process than its federal counterpart. <u>See</u> <u>Pennsylvania Game Comm'n. v. Marich</u>, 542 Pa. 226, 229 n.6 (1995).  The Court's reasoning therefore applies with equal force to Plaintiffs' state due process claims.

Accordingly, Plaintiffs have not sufficiently alleged a procedural due process violation in their amended complaint.  Plaintiffs will be granted leave to amend their complaint on this count.

C.      **Reputational injury claim**

In their amended complaint, Plaintiffs seek damages for violations of their "right to reputation under the Pennsylvania Constitution and the United States Constitution's Fourteenth Amendment." (Doc. No. 10 ¶ 81(c).) Plaintiffs raise this claim separately from their due process claims. (Id. ¶¶ 81(a-c).) Defendants seek dismissal of the reputation claim, arguing that Plaintiffs may not raise a "stand alone" claim for reputation injury. (Doc. No. 16 at 13-14.) Plaintiffs argue in opposition that the state constitution does protect their right to reputation just as it protects other fundamental rights. (Doc. No. 25 at 16.)

The Pennsylvania Constitution does afford some protection to an individual's interest in his or her own reputation. "[I]n Pennsylvania, reputation is an interest that is recognized and protected by our highest state law: our Constitution," so therefore, reputation interests have been afforded the state protections "of due process and equal protection."[8] R. v. Com. Dept. of Pub. Welfare, 535 Pa. 440, 454 (Pa. 1994) (citing Hatchard v. Westinghouse Broadcasting Co., 516 Pa. 184, 193 (Pa. 1987)).

Nevertheless, the Court will dismiss Plaintiffs' state law reputation claims for two reasons: (1) Plaintiffs reputational injury is not adequately supported by factual allegations; and (2) Plaintiffs have not identified a cause of action for their reputation injury.

1.      **Factual allegations**

In their amended complaint, Plaintiffs allege that "Plaintiff Jacqueline Rosario has been impeded from seeking employment opportunities because of Defendant Utz's decision to un-expunge reports that were already expunged." (Doc. No. 10 ¶ 78.) Plaintiffs seek compensatory damages for these "lost employment opportunities." (Id. ¶ 81.) Elsewhere, Plaintiffs assert

---

[8] Consequently, in its foregoing discussion of federal procedural due process, the Court assumed that a reputation injury could be sufficient to invoke the procedural component of federal due process, but not the substantive component.

generally that a founded ChildLine report has a deleterious effect on reputation.  (E.g., id. ¶ 22) ("An indicated or founded report of child abuse registered with ChildLine against an individual impairs that individual's right to reputation and employment.").  Plaintiffs do not allege that Plaintiff Rosario was unsuccessful at securing any particular employment, that potential employers would disqualify Plaintiff Rosario from consideration because of her ChildLine report, or that Plaintiff Billups experienced any injury at all to his reputation.[9]

Plaintiffs' sparse allegations are insufficient to comply with modern federal pleading standards established by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny, which require more than the unsupported mention of a protected interest.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The parts of the complaint that pertain to reputational injury are "no more than conclusions," which at this stage of the litigation, "are not entitled to the assumption of truth."  Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Ashcroft, 556 U.S. at 679).  Plaintiffs must allege more factual matter in order to plausibly allege an injury to their reputations.

### 2.      Legal cause of action

In their amended complaint, Plaintiffs allege simply that Defendants "violated the Plaintiffs' right to reputation" under both the federal and state constitutions.  (Doc. No. 10 ¶ 81(c).)  This allegation is made separately from Plaintiffs' allegation that Defendants "violated the Plaintiffs' right to due process" under both the federal and state constitutions.  (Id. ¶ 81(a).)

---

[9] In addition, there is no protected interest – reputation-based or otherwise – in any particular type of employment.  The Pennsylvania Supreme Court rejected a very similar argument in R. v. Commonwealth Department of Public Welfare, a case to which Plaintiffs make liberal citation. In that case, the majority considered that the child abuse report could be disclosed to prospective employers, but also concluded that the plaintiff was free to seek jobs that did not involve "direct contact with children," and thus did not necessitate disclosure of the report.  R. v. Com., 535 Pa. at 453.  According to the majority, the plaintiff in that case cited "nothing that would indicate that he has a legitimate claim of entitlement to any job," and in addition "any adverse effects on his reputation [were] very limited."  Id. at 453, 456.

Accordingly, it follows that Plaintiffs base their claim for reputational injury on a legal cause of action other than due process, but Plaintiffs do not identify what that cause of action may be.

Plaintiffs assert that the federal system requires only notice pleading such that the specific provisions of law Plaintiffs claims are based upon are "not relevant at this stage of the proceeding."  (Doc. No. 25 at 26.)  While it is true that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," federal plaintiffs – especially those represented by counsel – cannot survive a motion to dismiss without some suggestion of what law entitles them to relief.[10] Ashcroft, 556 U.S. at 679.  Third Circuit precedent requires the Court to "take note of the elements a plaintiff must plead to state a claim," before the Court may pass on the sufficiency of the factual allegations from a complaint.  Santiago, 629 F.3d at 130.  The Court is unable to undertake this task without guidance from Plaintiffs as to the causes of action that they intend to raise.

Accordingly, the Court will dismiss Plaintiffs' reputation-based claims without prejudice.[11]

**D.   <u>Younger</u> abstention**

Defendants urge the Court to abstain from adjudicating the present dispute, arguing that the United States Supreme Court's decision in <u>Younger v. Harris</u>, counsels in favor of allowing

---

[10] For the same reason, the Court will grant the County Defendants' motion to dismiss to the extent that it seeks dismissal of claims brought pursuant to legal provisions Plaintiffs merely recite, including the First, Fifth, and Sixth Amendments to the United States Constitution.

[11] Having determined that Plaintiffs have failed to state a claim for relief on their substantive claims, the Court will not independently address their related conspiracy claims.  <u>See</u> <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 405-06 (3d Cir. 2000) (predicting that the Pennsylvania Supreme Court would not sustain a civil conspiracy claim absent a substantive underlying claim); <u>Young v. New Sewickley Tp.</u>, 160 F. App'x 263, 266-67 (3d Cir. 2005) (affirming dismissal of civil rights conspiracy claim when the underlying civil rights claim was properly dismissed).

the dispute to proceed in the state court system instead.  (Doc. No. 16 at 26-28.)  Plaintiffs argue that Younger abstention is not warranted in this case because the BHA has found that it lacks jurisdiction over Plaintiffs' claims regarding Defendant Utz's reinstatement of the ChildLine report, so there is no pending state court action to justify abstention.  (Doc. No. 25 at 23-24.)

The Court will decline to abstain from this dispute at the present juncture.  Defendants argue that three conditions must be met before Younger abstention is appropriate: (1) there is a pending state judicial or administrative proceeding; (2) the proceeding implicates important state interests; and (3) there is an adequate opportunity for plaintiffs to raise their constitutional challenges in the state forum.  (Doc. No. 16 at 26) (quoting Ocean Grove Camp Meeting Assn. of United Methodist Church v. Vespa-Papaleo, 339 F. App'x 232, 236 (3d Cir. 2009)). However, these three prerequisites, commonly referred to as the Middlesex factors, are not the threshold inquiry for abstention.  In Sprint Comm., Inc., v. Jacobs, 134 S.Ct. 584 (2013), the United States Supreme Court reiterated that "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'"  134 S.Ct. at 591 (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).  The Supreme Court continued to explicitly limit the scope of Younger abstention to instances when the adjacent state court litigation is any of three types: (1) ongoing criminal prosecutions; (2) civil enforcement proceedings; or (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions."  Id. at 588, 591.  Neither party has briefed this recent development in abstention jurisprudence.  Only after it has been determined that the state proceeding is one of those three types will a court consider the three Middlesex factors Defendants address in their papers.  See id.  In the absence of full briefing on the issue, and in

the absence of a detailed factual record from which it can determine the nature of the ongoing

state litigation, the Court will not invoke <u>Younger</u> to abstain from the present action.

**IV.    CONCLUSION**

      For the foregoing reasons, the Court will grant Defendants' motions in part and dismiss

Plaintiffs' complaint without prejudice.  Plaintiffs will be afforded the opportunity to file an

amended complaint to address the pleading deficiencies identified herein.  An order consistent

with this memorandum follows.